## In re DIASONICS SECURITIES LITIGATION.

### Civ. A. No. 85–X–261.

United States District Court,
D. Colorado.

June 9, 1986.

Camilla Dresselhuys, San Francisco, Cal., for Diasonics.

Robert L. Connelly, Jr., Isaacson, Rosenbaum, Woods, Levy & Snow, Denver, Colo., for Fischer Imaging Corp.

## ORDER

DONALD E. ABRAM, United States Magistrate.

This federal securities action arises from the alleged dissemination of a materially misleading Registration Statement and Prospectus by Diasonics, Inc., a California corporation, in connection with its public offering of common stock on February 23, 1983. Diasonics raised more than 125 million dollars from public investors as the result of this offering. This action is brought by a plaintiffs' class comprised of all persons who purchased Diasonics common stock during the period of February 23, 1983, through January 31, 1984. Plaintiffs allege that the representations made by Diasonics of its financial condition were inaccurate and misleading.

The main cases are pending in the United States District Court for the Northern District of California, in Civil Action No. C–83–4584–RFD. Plaintiffs seek an order from this court pursuant to F.R.Civ.P. 37(a), to compel Fischer Imaging Corp. ("Fischer"), a Colorado corporation who temporarily had merged with Diasonics, to produce certain documents regarding the Fischer merger transaction and related matters. Plaintiffs aver that the documents which were produced by Diasonics and its written responses to these requests are inadequate. This Court heard oral arguments on Plaintiff's Motion to Compel on February 19, 1986.

## FACTS

Fischer is a Colorado corporation that has its principal place of business located in Denver, Colorado. Neither Fischer nor its shareholders, officers or directors are parties to the underlying action. Both Diasonics and Fischer were engaged in the manufacture, distribution and development of digital x-ray equipment during the disputed period.

Fischer was a closely held corporation owned by Morgan W. Nields, Kinney Johnson, the Robert Nields Trust, and Menacham Assn. During 1983, Diasonics negotiated with Fischer for the acquisition of this closely held corporation. On August 11, 1983, Diasonics acquired all the shares of Fischer stock and Fischer became the wholly owned subsidiary of Diasonics. Upon completion of this merger, Morgan Nields retained his position as the president of Fischer and became the president and chief operating officer of Diasonics and a member of its board of directors. Kinney Johnson continued as the executive vice president of Fischer and became the vice president of Diasonics.

Shortly after the completion of the Fischer acquisition, Nields and Johnson became concerned about the acquisition of Fischer by Diasonics. Both Nields and Johnson, while remaining as officers of Diasonics, commenced communications with Jim Easterling, the Chicago attorney who had represented Fischer in the Diasonics-Fischer merger agreement. They sought his legal advice regarding the possible rescission of

the sale, as former Fischer shareholders and on Fischer's behalf. Subsequently, in 1984, Nields and Johnson retained the California counsel of McCutchen, Doyle, Brown, and Enersen to represent Fischer and the former Fischer shareholders. On April 16, 1984, the acquisition agreement between Fischer and Diasonics was rescinded and the Fischer shareholders received back their shares of Fischer common stock from Diasonics. Only then did Nields and Johnson resign their positions as officers of Diasonics. Fischer later acquired the Digital Radiography Division of Diasonics on June 29, 1984, in connection with this merger rescission.

### PLAINTIFF'S MOTION

The plaintiffs state in their Motion to Compel Production of Documents from Fischer, that Diasonics made similar misrepresentations of its financial condition to Fischer in the merger negotiations, as it had made to the plaintiffs in the 1983 prospectus and other public documents. They seek documents from Fischer which relate to the sale of Fischer to Diasonics and the subsequent rescission, the acquisition by Fischer of the Diasonics Digital Radiography Division and documents regarding the financial condition of Diasonics and Fischer.

The shareholders allege that Fischer's written responses to its requests for production of documents are inadequate and that the documents that were produced are unresponsive to the request. For the first time at the February 19, 1986 hearing, Fischer raised the issue of attorney-client privilege on certain documents to this court. Fischer later raised this privilege in its March 24, 1986 brief regarding 6 Johnson documents. Diasonics has entered an appearance solely for the purpose of raising the attorney-client privilege as to any communications between Nields and general counsel for Diasonics.

Pursuant to an order of this Court, Fischer has submitted these documents for *in camera* review and has also filed revised written responses to the requests for production of documents. After reviewing these documents and voluminous briefs and exhibits and other documents filed by the parties, the Court enters the following order.

### FISCHER'S OBJECTION

The attorney for Fischer Imaging Corp. has objected to producing these documents based on the assertion of the attorney-client privilege. The attorney-client privilege is the oldest privilege applicable to confidential communications between a client and his attorney. Its purpose is to encourage a client to make a full disclosure to his attorney which will enable the attorney to provide sound legal advice. *UpJohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). This privilege applies if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir.1984); *Casson Construction Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 384 (D.Kan.1980) (*quoting United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950).

The privilege may only be raised by the client, who may be a corporation as well as an individual. *UpJohn*, 449 U.S. 383, 101 S.Ct. at 679. However, the privilege must be narrowly construed. *In re Grand Jury Subpoena Duces Tecum, Dorokee Co.*, 697 F.2d 277, 278 (10th Cir.1983). The relation-

ship between the attorney and the corporate client must be fostered by protecting the legal communications which are intended to be confidential. *See S.E.C. v. Gulf & Western Industries, Inc.*, 518 F.Supp. 675 (D.C.Cir.1981). When the privilege is raised to bar the production of pre-existing documents given by a client to his attorney to assist in his legal representation, only materials which would have been privileged in the hands of the client are protected. *Dorokee Co.* at 278–79; *see Fisher*, 425 U.S. at 404, 96 S.Ct. at 1577.

The United States Supreme Court held in *UpJohn Co. v. United States*, that a corporation may assert the attorney-client privilege on its behalf. This *UpJohn* privilege is limited to communications which request legal advice made to the attorney by the corporate client which request legal advice. The privilege is, however, inapplicable to business advice given by the attorney. *In re John Doe Corp.*, 675 F.2d 482, 488 (2nd Cir.1982); *see In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036–37 (2nd Cir.1984). The mere showing that the communication was from a corporate client to an attorney is not sufficient to establish existance of an attorney-client privilege. *See Gulf & Western Industries, Inc.*, 518 F.Supp. 675.

It is well established that the party seeking to assert the attorney-client privilege has the burden of proving the applicability of the privilege. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985); *In re Grand Jury, Dorokee Co.*, 697 F.2d at 279; *United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979). The party must show that the privilege clearly applies to the documents in dispute by specifically setting forth the objections. General allegations are insufficient to meet this burden of proof. *Peat, Marwick, Mitchell and Company*, 748 F.2d at 542; *State of Colorado v. Schmidt-Tiago Construction Co.*, 108 F.R.D. 731, 734 (D.Colo.1985).

The Nields and Johnson documents which Fischer asserts are protected by the attorney-client privilege are primarily the handwritten notes of these individuals made while they were officers of both Diasonics and Fischer. It is undisputed that during this period, that Fischer was a wholly owned subsidary of Diasonics.

In their affidavits, Morgan Nields and Kinney Johnson attempt to keep their duties to each of these corporations separate and apart from one another and to also treat these corporations as two separate entities. They totally ignore the interrelationship of the corporations and their duties to each corporation, especially as to Diasonics. While president and vice president, respectively of both corporations, Nields and Johnson sought legal advice of the previous counsel of Fischer, Jim Easterling and later from the McCutchen firm, purportedly as a former Fischer shareholder and on behalf of that company.

Pursuant to Colorado law, Nields and Johnson, as Diasonics' officers and directors at the time they had these communications, had fiduciary responsibilities to the plaintiffs, the Diasonics shareholders. *Herald v. Seawell*, 472 F.2d 1081, 1091 (10th Cir.1972); *Irwin v. West End Development Co.*, 342 F.Supp. 687, 697 (1972), *aff'd in part*, 481 F.2d 34 (10th Cir.1973); *Unicure, Inc. v. Thurman*, 42 Colo.App. 241, 599 P.2d 925 (1979); *see Christy v. Cambron*, 710 F.2d 669, 672 (10th Cir. 1983).

The case of *Bailey v. Meister Brau, Inc.*, 55 F.R.D. 211 (N.D.Ill.1972), is factually similar to the instant action. Meister Brau had purchased the James H. Black Company and defendant Cappadocia, who was a Meister Brau senior vice president, was installed as the president and chairman of the board of the Black Company. Plaintiff, who was a former chief operating officer and director of the Black Company, brought suit against the defendants, alleging that they had conspired to breach his contractual right to purchase the Black Company. Bailey sought discovery of information regarding the substance of conversations between defendants Cappaducia and Meister Brau legal counsel. Defend-

ants objected on the basis that this information was protected by the attorney-client privilege.

Cappaducia had obtained this legal advice from Meister Brau's counsel while an officer and fiduciary of both corporations, which action may have been contrary to the interest of the Black Company shareholders. Cappaducia claimed that attorney-client privilege applied to these discussions as he was acting on behalf Meister Brau at the time he sought this legal advice and he was wearing his "Meister Brau hat". The court stated that:

> A fiduciary cannot turn his responsibilities on and off like a faucet; Cappaducia was under a continuing obligation to plaintiff as a shareholder.... As long as that duty existed, so did the concomitant interest of the Black Company shareholders in knowing his legal communications concerning the future of their company.

*Id.* at 214. *See also Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.) (1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971).

I therefore find that Nields and Johnson had a fiduciary responsibility to Diasonics and its shareholders. In light of the above, I make the following findings.

### FISCHER IMAGING CORP. PRIVILEGE

■ A corporation is an inanimate entity which can raise the attorney-client privilege only through its officers or directors. Fischer raises the attorney-client privilege on behalf of the corporation through Johnson and Nields. As managers of the corporation, they must exercise that privilege consistent with their fiduciary responsibility on behalf of the corporation and not on their own personal interests. *Commodity Futures Trading Comm'n. v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985).

One of the issues in this case is whether Fischer, as a corporation has the right to raise the privilege. All of the alleged communications are notes of Nields and John-

son which were made while they were corporate officers of Diasonics and Fischer. Fischer was a wholly owned subsidiary of Diasonics. The attorney-client communications were made when the two individuals had a fiduciary responsibility to the board of directors and shareholders of Diasonics and not to the presently existing board and shareholders of Fischer. Therefore, if any right exists in a corporation to raise the attorney-client privilege, it remained with Diasonics and not with Fischer after it had separated from Diasonics. *Commodity Futures Trading Comm'n. v. Weintraub,* 105 S.Ct. at 1991; *Garner v. Wolfinbarger,* 430 F.2d at 1103; *Bailey v. Meister Brau, Inc.,* 55 F.R.D. at 214.

■ Further, it is clear by the affidavits of both Nields and Johnson that they were acting on their own behalf and not for the benefit of either Diasonics or Fischer. As stated in Mr. Johnson's affidavit "after the acquisition of Fischer by Diasonics and as a former Fischer shareholder, I solicited and obtained legal advice from James T. Easterling of Chicago, Illinois, law firm of Coffield, Ungaretti, Harris, and Slavin. Morgan W. Nields and I sought this advice, on behalf of Fischer and its former shareholders, regarding concerns we had about the acquisition of Fischer by Diasonics. It was natural and logical for us to contact Mr. Easterling because he *had been* Fischer's counsel *prior to the acquisition* and had handled the legal work in connection with the acquisition". (emphasis added). Nields and Johnson were concerned about their own personal financial needs as the previous stockholders of the closely held corporation. The requested advice was for their own personal benefit and not that of the Fischer corporation.

I find that Fischer does not have the authority to raise the attorney-client privilege.

### FIDUCIARY RESPONSIBILITY

■ Any communications by Nields and Johnson are not confidential and protected by the attorney-client privilege because of

their fiduciary responsibility to the shareholders of Diasonics. The communication occurred while Johnson was an officer of both Fischer and Diasonics and Nields was an officer and member of the board of directors of Diasonics. They had a fiduciary responsibility to act in the best interests of the corporation and the shareholders of Diasonics. *Commodity Futures Trading Comm'n. v. Weintraub*, 105 S.Ct. at 1991. Nields and Johnson also had conflicting interests with their responsibilities as officers of Diasonics when they personally began to seek a method to rescind the purchase of Fischer by Diasonics. At the same time that they were operating and managing the company, they were obtaining legal advice from Easterling to rescind the sale of Fischer to Diasonics.

Nields and Johnson, while in a fiduciary relationship with Diasonics, communicated with an attorney to obtain information or legal advice which was contrary to that fiduciary responsibility. The communication can not be withheld from the persons to whom they had a fiduciary responsibility. *In re Colocotronis Tanker Securities Litigation*, 449 F.Supp. 828, 833 (S.D.N.Y. 1978); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 370 (D.Del.1975). The shareholders have a right to know about legal communications concerning the future of their company. *Bailey v. Meister Brau, Inc.*, 55 F.R.D. at 214.

I find that the communications are not privileged because of the fiduciary responsibility of Nields and Johnson to the shareholders of Diasonics.

### FRAUD

■ As previously stated, Johnson and Nields began to have doubts about the acquisition shortly after the acquisition and after their assumption of responsibilities as officers of Diasonics. Within three months, they were in the process of obtaining legal advice to rescind the transaction. They obtained separate counsel in Easterling and later the San Francisco law firm of McCutchen, Doyle, Brown and Enersen. Active steps were taken to rescind the sale

for their own personal benefit as the previous shareholders of Fischer, a closely held corporation.

Such transactions have been held to constitute fraud on the other shareholders. *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 993 (7th Cir.1976); *Valente v. Pepsico, Inc.*, 68 F.R.D. at 370; *In re Vargas*, 723 F.2d 1461, 1467 (10th Cir.1983). The attorney-client privilege does not apply where the privilege is raised to shield a disclosure of communications for the planning of fraud or ordinary torts. *Commodity Futures Trading Comm'n. v. Weintraub*, 105 S.Ct. at 1994.

I find that the information is discoverable because of the fraud/tort exception to the attorney-client privilege.

### THIRD PARTY DISCLOSURE

■ Nields maintained notes from board meetings and other conversations with corporate counsel for Diasonics. He was also communicating to Easterling information obtained from those board meetings for the purposes of rescinding the sale of Fischer to Diasonics. Easterling was not corporate counsel for Diasonics or a person within the confidential circle protected by the privilege. *See UpJohn Co. v. United States*, 449 U.S. at 384–85, 101 S.Ct. at 679–80. Disclosure of information obtained by a person not entitled to the confidential information is inconsistent with the privilege relationship and waives the privilege. *United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979); *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1369 (D.C.Cir.1984).

I find that even if confidentiality exists as to the notes taken by Nields of conversations with Diasonics counsel, the confidentiality was broken by the information being provided to Easterling and subsequently counsel.

Diasonics claims the privilege on any communications between general counsel for Diasonics and Nields. Diasonics sets forth no specific documents or conversations which qualify for the privilege. Diasonics has failed to sustain the burden re-

quired of a person raising the attorney-client privilege. *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir.1984); *Peat, Marwick, Mitchell and Co. v. West,* 748 F.2d at 542.

Further, the privilege does not apply because of all of the above reasons previously stated by the Court.

## SUMMARY

The facts of this case raise an old adage "one can not serve two masters". Johnson and Nields, while corporate officers of Diasonics were actively pursuing a course of conduct for their own gain by dissolving the marriage between Fischer and Diasonics. They went beyond wanting a divorce, they wanted an annulment. A dissolution that would decree that no valid marriage had ever occurred. All this was done without disclosure to the other investors in Diasonics. As stated in *Bailey v. Meister Brau, Inc.,* 55 F.R.D. at 214 "a fiduciary can not turn his responsibilities on and off like a faucet ..." Furthermore, a fiduciary can not hide behind the attorney-client privilege to avoid discovery of his wrongdoings. *Commodity Futures Trading Comm'n. v. Weintraub,* 105 S.Ct. at 1994.

IT IS HEREBY ORDERED that the Motion to Compel is hereby GRANTED. FURTHER, IT IS ORDERED that Fischer Imaging Corporation and its officer's Nields and Johnson shall provide the documents claimed as privileged to the plaintiffs no later than June 30, 1986.