**In re SEALED CASE.**[*]

**No. 87 C 9853.**

United States District Court,
N.D. Illinois, E.D.

April 6, 1988.

---

* The complaint and documents filed by the parties have been ordered sealed. The identity of the parties and revelant circumstances are not disclosed in order to explain the court's rulings on questions of first impression. *In re Sealed Case,* 676 F.2d 793, 797 n. 1 (D.C.Cir.1982).

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

BERNARD WEISBERG, United States Magistrate.

In 1986 Seller corporation sold all of the stock of Subsidiary corporation to Purchaser, a company newly organized at the time of the purchase by John Doe, its sole stockholder. In 1987 Purchaser filed this securities fraud lawsuit against Seller alleging that Seller misrepresented and omitted material facts in connection with its sale of Subsidiary stock in violation of § 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933. The complaint also alleges breach of an agreement to arbitrate and pendent common law fraud and breach of contract claims.

Purchaser has moved to compel production by Seller of sixteen documents which Seller claims are privileged as attorney client communications or attorney work product. Subsidiary has waived any attorney client privilege or work product interest in favor of disclosure to Purchaser. The motion presents questions of first impression about who controls the attorney client privilege of a corporate subsidiary

after the subsidiary is sold, with respect to confidential communications of the subsidiary prior to the sale.[1]

A key charge in Purchaser's complaint is that at the time it sold the stock of Subsidiary Seller concealed the *Alpha* case, litigation brought in January 1985 by a former Subsidiary officer against Seller, Subsidiary and other defendants in which Seller made allegations raising serious questions about Subsidiary's business, the value of its products, the quality and integrity of its management and its good will and business reputation. The *Alpha* case was filed in the United States District Court for the Distant District. Seller and Subsidiary were jointly represented in that case by attorney James Doe. *Alpha* was settled by agreement, dismissed and at the request of Seller and Subsidiary the *Alpha* court file was sealed in 1986, prior to the sale of Subsidiary stock. In addition, the settlement agreement contained confidentiality provisions covering deposition transcripts and summaries, documents exchanged and information acquired by the parties in that litigation.

According to Seller, the sixteen documents sought by Purchaser's Motion to Compel fall into two categories, (1) documents relating to the *Alpha* litigation and the *Beta* lawsuit, another case in which Seller and Subsidiary were defendants jointly represented by the same attorney, and (2) other documents "which contain attorney-client communications occurring prior to and/or relating to the sale of Subsidiary, Inc." Def. Response at 2.[2] Some documents may fall into both categories. Seller's privilege list indicates that most of the documents are memoranda between Subsidiary officers and employees and in-house attorneys in Seller's legal department who handled legal matters for Seller and its subsidiaries, including Subsidiary. The remaining documents appear to be

---

1. Although Seller has also invoked the work product doctrine, both parties have treated the attorney-client privilege as determinative. The court will do likewise.

2. The documents in dispute here apparently do not include any of the documents at issue on

motions filed by Subsidiary to unseal the *Alpha* file and by Purchaser to compel compliance with a subpoena served on attorney James Doe seeking production of depositions and other material in the *Alpha* litigation. Those motions are currently pending in the Distant District.

communications between outside attorneys who represented Seller and Subsidiary in the *Alpha* and *Beta* cases and employees of Seller and/or Subsidiary (Documents 36, 37, 38, 43, 44 and 45). The documents have not been submitted for in-camera examination. All of the documents are dated prior to the 1986 stock purchase agreement between Seller and Purchaser.

Purchaser argues that Subsidiary (and its parent Purchaser) are entitled to access to the disputed documents because most of them were communications to and from officers and employees of Subsidiary. Thus, Subsidiary itself was the client.[3] Purchaser relies on *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), in which the Supreme Court held that the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney client privilege with respect to communications that took place before the filing of the petition in bankruptcy. The Court said that for solvent corporations the power to waive the privilege is exercised by officers and directors consistently with their fiduciary duty to act in the best interest of the corporation. The Court went on to say,

> The parties also agree that when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers....

471 U.S. at 349, 105 S.Ct. at 1991.

Seller argues that . *Weintraub* at most supports the proposition that new *management* can waive the privilege where owner-

ship is unchanged. Here, Seller says, new *ownership* is at issue and, unlike managers, the new and prior owners of Subsidiary are free to pursue their adverse interests without regard to the interests of the corporation. But that ignores the Court's inclusion of takeovers and mergers in its statement about the power of new corporate managers to waive the attorney client privilege as to communications of prior management. Takeovers, and many if not most mergers, involve changes in ownership. Seller also relies on *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99 (S.D.N.Y.1986), in which Judge Weinfeld distinguished *Weintraub*. But *Sobol* did not question the general rule stated in *Weintraub*. *Sobol* simply rejected an effort to apply *Weintraub* to the transaction in that case which was a sale of assets rather than a sale of stock.

Nevertheless, as Seller observes, the broad statement quoted above from *Weintraub* is *dictum*. *Weintraub* involved control of the privilege as between a bankruptcy trustee and the directors of an insolvent debtor. *Weintraub* did not specifically address the question presented here about control of the privilege of a divested corporate subsidiary.

Seller's principal reliance is on *In re Diasonics Securities Litigation*, 110 F.R.D. 570 (D.Col.1986). Diasonics acquired all of the stock of Fischer Imaging Corp. Nields and Johnson, former Fischer stockholders, continued as officers and directors of Fischer and became officers and directors of Diasonics. Soon afterwards Nields and Johnson consulted attorneys about seeking rescission of the acquisition. The acquisition was later rescinded and Nields and Johnson then resigned their positions as officers of Diasonics. Still later, Diasonics was sued by its stockholders who claimed misrepresentations in connection with a public offering of Diasonics common stock. Plaintiffs sought discovery of documents

---

**3.** Purchaser says that the only documents sought in its motion which have not been disclosed to Subsidiary employees are Nos. 36 and 45 written by outside counsel jointly representing Subsidiary in the *Alpha* and *Beta* cases and Document 42, a Gamma Co. report. Motion to Compel at 3, n. 3. Those three documents are separately discussed later in this Memorandum. Documents 27 and 33, which are also listed in the Motion to Compel, since have been produced by Seller. Def. Response at 1.

regarding the Fischer merger transaction, alleging that Diasonics made similar misrepresentations in the Fischer merger negotiations and in its public offering prospectus. Fischer claimed the attorney client privilege as to notes made by Nields and Johnson regarding their consultations with attorneys about possible rescission of the merger. The court held that under Colorado law Nields and Johnson as Diasonics officers and directors at the time of those communications had fiduciary responsibilities to Diasonics shareholders. The court concluded that Fischer did not have authority to raise the attorney client privilege because Nields and Johnson were acting on their own behalf and not for the benefit of either Diasonics or Fischer. Moreover, in seeking rescission Nields and Johnson ignored their conflicting responsibilities to Diasonics shareholders, may have committed a fraud on those shareholders, and the fraud-tort exception to the attorney client privilege applied. *Id.* at 575.

Although *Diasonics* involved the availability of the attorney-client privilege after Diasonics divested Fischer, the issue was quite different from the question posed here. This case would be like *Diasonics* if *Subsidiary* were invoking the privilege to bar disclosure to Seller shareholders of attorney communications of former Subsidiary officers and directors made while they were Seller officers and directors where the communications were themselves a violation of their fiduciary duty as Seller officers and directors to Seller and its stockholders.

*Diasonics* said,

The attorney-client communications were made when the two individuals had a fiduciary responsibility to the board of directors and shareholders of Diasonics and not to the presently existing board and shareholders of Fischer. Therefore, if any right exists in a corporation to raise the attorney-client privilege, it remained with Diasonics and not with Fischer after it had separated from Diasonics. *Commodity Futures Trading Comm'n. v. Weintraub,* 105 S.Ct. at 1991.

110 F.R.D. at 574. Seller stresses the second sentence of this quotation in its attempt to draw from *Diasonics* a broad rule that "privileges do not travel with the subsidiary once that subsidiary is divested from the parent in a sale of stock transaction." Def. Sur–Reply at 2. In Seller's view, when a corporate parent sells the stock of a subsidiary the parent retains indefinitely the exclusive power to decide whether to exercise or waive the privilege as to prior attorney-client communications of the subsidiary. *Diasonics* does not stand for such a rule. As the first sentence of the quotation indicates, the court concluded that if the putatively privileged communications were made on behalf of either corporation, it was Diasonics and not Fischer. As the citation of *Weintraub* indicates, that was the reason why incumbent management of Diasonics controlled any applicable privilege.

It is true that during the time Subsidiary was a Seller subsidiary Subsidiary's officers and directors owed a fiduciary duty to Seller, its then sole stockholder. However, there is no suggestion that any of the confidential communications at issue here involved any violation by Subsidiary or any of its officers of a fiduciary duty to Seller. Seller has not explored the ramifications of its argument that because of the fiduciary duties of a subsidiary to its corporate parent the parent retains control of the subsidiary's privileges after the subsidiary is sold as to pre-sale communications. One thing is clear. To invoke fiduciary duties is not enough. That is the teaching of Justice Frankfurter's admonition in *Securities & Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

[T]o say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty? *Id.* at 85–86, 63 S.Ct. at 458–59.

*United States v. AT & T,* 86 F.R.D. 603, 616–18 (D.D.C.1979), collects the few au-

thorities on attorney-client privilege questions in the corporate parent-subsidiary setting. Those authorities focus on the rule that legal advice provided jointly to multiple corporate clients is generally privileged as against third parties. But none of those authorities address privilege questions which arise after a sale between the divested subsidiary and its former parent.

Seller argues that here, as in *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), the court should look "to the economic substance of the transaction, rather than just to its form ..." *Id.* at 688, 105 S.Ct. at 2303. The substance of the transaction here was an agreement for the sale of stock which contemplated that Subsidiary would continue in existence with the normal attributes of a business corporation. Those attributes include rights and obligations which go back to the time of its incorporation. They include assets and liabilities as to which the need for post-sale access to pre-sale legal advice may be expected in the ordinary course of business. For example; questions may arise after the sale regarding the articles of incorporation of the divested subsidiary or a continuing contract on which pertinent legal advice was obtained prior to the sale. Sale of the stock of the subsidiary also assumes the ability of successor management to exercise normal management prerogatives. Those prerogatives include control over the privileges of the corporation based on current determinations of its best interests. This is the principle stated in *Weintraub,* that a normal consequence of a succession of corporate management, with or without a change in ownership, is that the new management has the authority to assert or waive the corporation's privilege based on their determination of the best interests of the corporation.

█ It is reasonable then to treat the parties to a subsidiary divestiture by sale of stock as having contracted on the assumption that after the sale management of the divested corporation will control its attorney-client privilege. The parties are free to vary this rule by agreement. For example, if the selling parent will have a continuing interest after the sale in contracts, assets or liabilities of the subsidiary the parent can negotiate for special access or control to protect that interest. Similarly, if the attorneys who represent a corporate parent also represent its subsidiary in the sale of the subsidiary's stock they run the resulting risk that after the acquisition subsidiary management will waive the privilege with respect to *its* communications with those attorneys. A seller who wishes to avoid that result can do so by agreement with the purchaser or by employing separate counsel for the subsidiary and limiting to the parent's own attorneys those communications which the parent wishes to protect.

Seller insists that in purchasing Subsidiary stock, Purchaser did not "buy in" on the attorney-client relationship that existed between Seller and its attorneys. But that argument ignores the fact that Subsidiary was a party to the communications in issue. Most of the communications involved were, in fact, between Subsidiary officers and employees and attorneys who represented Subsidiary as well as Seller.

Another "substance versus form" argument advanced by Seller is that Seller bought Subsidiary in 1982 for a sum in excess of X dollars and sold Subsidiary to Purchaser in 1986 for 1/13th of X dollars after its principal Delta business was terminated and substantial assets were transferred to other Seller subsidiaries. Seller argues in effect that the Subsidiary it sold was a different corporation than Subsidiary as it existed at the time of the *Alpha* litigation, because the old Subsidiary was much larger and had significant Delta business while the Subsidiary which Purchaser acquired was much smaller and was only a Epsilon business.[4] Seller says that the effect of those changes should be considered in determining "whether the privileges of Subsidiary, Inc. were incidents of its sale to Purchaser." Def. Sur–Reply at 3. However, Seller cites no authority for its suggestion that control of a corporation's at-

4. Purchaser disputes some of those factual claims.

torney-client privilege should flow with its assets rather than according to conventional corporate rules based on ownership of its stock. Nor does Seller suggest any standard which could guide the court if an asset-based approach were used for this purpose.

Seller argues that to permit post-acquisition management to control the privilege as to pre-acquisition privileged communications "would set an unwarranted and unjustifiable precedent for the complete erosion of the confidentiality normally associated with attorney-client communications in the context of corporate mergers and acquisitions." Def. Response at 15. The Supreme Court rejected a similar "chilling effect" argument in *Weintraub.*

> [T]he chilling effect is no greater here than in the case of a solvent corporation, where individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel.

471 U.S. at 357, 105 S.Ct. at 1995. Again, confidentiality can be protected by employing separate counsel for the subsidiary or by negotiating special agreements on the subject.

*International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir.1975), relied on by Seller, is not inconsistent with the approach taken here. *Flanzer* refused to disqualify a law firm from representing the defendant-selling stockholders of a corporation although in the acquisition negotiations a retired partner of the firm had represented the selling stockholders and the corporation acquired by the plaintiff which had been merged into the plaintiff. The court stressed the substance of the transaction, noting that while the transaction ended in a merger it was in a practical sense a sale and the law firm and the plaintiffs were on opposite sides of negotiations conducted at arm's length. *Id.* at 1292. Seller argues that just as the buyer was a stranger to the attorney-client relationship between the sellers and their attorneys in *Flanzer,* Purchaser is a stranger to

Seller's attorney-client relationship. Def. Response at 6–7. But Subsidiary itself was a party to the communications at issue here. Most of the communications involved were, in fact, between Subsidiary officers and attorneys who represented Subsidiary as well as Seller. *Flanzer* is entirely consistent with the principle on which this ruling is grounded that as to the attorney-client privilege parties who negotiate a corporate acquisition by the sale of stock should expect the normal consequences of a succession in corporate ownership and joint legal representation, subject to the terms of any special agreements.

Thus far we have spoken generally of privileged attorney-client communications of the subsidiary prior to its sale. However, as mentioned earlier, the documents sought by Purchaser fall into two categories, the first of which is documents relating to the *Alpha* and *Beta* litigation. Seller argues that those documents are privileged because they contain material which was part of the joint defense effort of Seller and Subsidiary as co-defendants in that litigation. Seller says that Subsidiary may not waive that privilege in favor of Purchaser, a third party, without the consent of all of the defendants in those cases.

*Matter Of Grand Jury Subpoena Duces Tecum dated November 16, 1974,* 406 F.Supp. 381 (S.D.N.Y.1975), explains that confidential communications between potential co-defendants and jointly retained counsel are privileged against third parties, except as between those clients which later become litigation adversaries. The exception does not apply and the privilege cannot be waived by one former joint defendant in favor of a third party where the former joint defendants have merely developed ill feeling or a divergence of interest. *Id.* at 394. Without this limitation, joint defense would become impractical since no defendant would be protected against a co-defendant trading a waiver in order to obtain a separate settlement. *Id.*

*Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21 (N.D.Ill.1980) (Aspen, J), followed *Matter of Grand Jury Subpoena Duces Tecum dated November 16, 1974*

72

and took it one step further, ruling that whether a document is part of a joint defense effort does not turn on the party to whom the document is directed but whether the document reflects material which is part of the joint defense effort. Thus, communications from settling defendants to their individual attorneys are privileged if those documents reflect the joint defense effort engaged in by defendants. *Id.* at 29.

Seller and Subsidiary were defendants jointly represented by the same attorney in *Alpha.* The question under *Ohio–Sealy* and *Matter of Grand Jury Subpoena Duces Tecum dated November 16, 1974* is whether Seller's consent is required before Subsidiary may waive the privilege as to joint defense material. Purchaser does not dispute that it and John Doe are third parties for purposes of the joint defense privilege waiver rule. But that does not end the inquiry. The cases cited by Seller do not address the question of how the joint defense privilege waiver rule applies where a corporate parent and subsidiary are the joint defendants and the subsidiary is then sold.

Joint legal representation of a corporate parent and subsidiary in general business matters and joint representation in litigation call for different treatment. Because the courts have given special protection to the expectation of confidentiality of jointly represented defendants it is reasonable to suppose that parties to a subsidiary divestiture negotiate in the expectation that the joint defense waiver rule will continue to apply to previously terminated litigation. If the litigation continues after the sale, presumably both corporations will continue to have access to pre-sale communications with joint counsel. However, when the litigation has been terminated prior to the sale, it seems unlikely that the former subsidiary will need access to joint defense material for its own purposes. And where it seeks such access for the benefit of its new owner, particularly where its new owner is a litigation adversary of its former parent, the argument for applying the special waiver rule of the joint defense cases is strong. The court concludes that the privilege attached to joint defense material created in the *Alpha* and *Beta* cases may not be waived by Subsidiary in favor of Purchaser without Seller's consent.

■ That leaves the question, which cannot be answered from the information in Seller's privilege list, of which of the documents at issue contain joint defense material. Seller is ordered to submit for in-camera examination all documents which it claims contain joint defense material.

### Document 42

■ Document 42 is described as a valuation report prepared by Gamma Co. estimating Subsidiary's fair market value. According to the deposition testimony of Harry Doe, a Seller officer, and the affidavit of Martin Doe, Seller general counsel, Document 42 was obtained by Harry Doe pursuant to Martin Doe's policy that valuations and fairness opinions be obtained for use by Seller's legal department with respect to Seller divestitures to assist Seller in defending potential shareholder lawsuits claiming that Seller received less than fair value in such divestitures and in rendering legal advice to Seller on whether divestiture agreements should be consummated. There is no indication that Document 42 was communicated to Subsidiary or to attorneys representing both Seller and Subsidiary with respect to a matter of joint interest. Seller relies on, and Subsidiary does not challenge, the general rule that the attorney client privilege extends to confidential communications of non-attorneys obtained in order to enable the attorney to give legal advice. See, for example, *In re Horowitz,* 482 F.2d 72, 80–81 (2d Cir.1973). Purchaser replies that Seller waived the privilege by producing Document 42 on January 15, 1988 for review by a legal assistant of Purchaser's attorneys. However Seller says that production was inadvertent. Inadvertent production does not waive the privilege. *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954–55 (N.D.Ill.1982) (Shadur, J.).

### Documents 36 and 45

Purchaser says that these documents have not been disclosed to Subsidiary employees and that they were written by out-

side counsel jointly representing Subsidiary in the *Alpha* and *Beta* cases. Even if those documents do not contain joint defense material, it appears that they do not involve attorney-client communications to which Subsidiary was a party. Purchaser's motion to compel is denied as to these documents.

*Additional Matters*

Purchaser's reply asks that Seller be barred from raising privilege issues with respect to two boxes of documents which Seller attorneys mentioned at the initial hearing on the plaintiffs' motion to compel and privilege issues which they said could be expected to arise later as to matters disclosed to the Securities Exchange Commission. Purchaser says that during that hearing the court ordered Seller to address all privilege issues which it then knew or had reason to anticipate would arise. While the court did make that request, the order entered on that day did not require Seller to expand its response beyond the issues raised by the pending motion to compel. Since Seller had not yet examined the pertinent documents and no 12(d) conference had been held, it was appropriate for Seller to limit its response to the pending motion to compel. Purchaser's request is denied.

Finally, Seller filed with its response to the motion to compel and without leave of court a 54 page brief filed in the Distant District in opposition to Purchaser's motion to compel production of documents by James Doe. The Distant District brief was filed by the same attorneys who represent Seller in this case. It was not simply filed as an exhibit. Seller's attorneys expressly incorporated the statement of facts and arguments presented in the Distant District brief in its response here. Def. Response at 2 n. 2. This was a direct violation of Northern District General Rule 9(d). It was a burdensome imposition on the court which was required to study the Distant District brief before determining that pertinent portions were largely an extended repetition of the same arguments presented in Seller's principal brief. While the court stated at a hearing on March 8, 1988 it did not intend to pursue the matter further, upon further consideration the court has concluded that a sanction is needed to make it plain that the local rule is not to be flouted in this way. *Westinghouse Electric Corp. v. NLRB*, 809 F.2d 419, 425 (7th Cir.1987); 28 U.S.C. § 636(b)(3) and Northern District General Rule 1.70 a, 1.70 c2.

To summarize,

1. Purchaser's motion to compel is denied as to Documents 36, 42 and 45.

2. Seller is ordered to submit for an in-camera examination all documents it claims include joint defense material created in connection with the *Alpha* and *Beta* lawsuits.

3. Purchaser's motion to compel is granted with respect to the other documents in dispute.

4. Seller's attorneys are fined $500 for their violation of Northern District General Rule 9(d) which they may not pass on to their client. Seller's Distant District brief is stricken and there shall be no further incorporation by reference of material in that brief.

The time under Fed.R.Civ.Proc. 72(a) for filing written objections to the rulings set forth in this memorandum and order is hereby extended until ten days after the entry of the court's ruling on the documents to be submitted by Seller for in-camera examination.