In re **SOUTHERN AIR TRANSPORT, INC.**, Debtor.

**Southern Air Transport, Inc., et al., Plaintiffs,**

v.

**SAT Group, Inc., et al., Defendants.**

**No. 99–0043.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

June 20, 2000.

Robert J. Sidman, Vorys, Sater, Seymour & Pease, Columbus, for Plaintiff Southern Air Transport.

Richard D. Brooks, Arter & Hadden, LLP, Columbus, for Plaintiff Official Committee of Unsecured Creditors.

John C. Hartranft, Porter, Wright, Morris & Arthur, Columbus, for Defendants

SAT Group, Inc., James H. Bastian and Mary J. Bastian.

Todd R. Legon, Wallace, Bauman, Legon, Fodiman & Shannon P.A., Miami, FL, Co–Counsel for Defendant Mary J. Bastian.

Robert D.W. Landon, II, Dunwedy, White & Landon, P.A., Coral Gables, FL.

### ORDER ON MOTION OF PLAINTIFFS TO COMPEL DISCLOSURE OR DISCOVERY

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court on the Motion To Compel Disclosure Or Discovery (the "Motion") filed by Plaintiffs Southern Air Transport, Inc. and the Official Committee of Unsecured Creditors of Southern Air Transport, Inc. (collectively referred to as "Plaintiffs"). Plaintiffs request an order compelling disclosure or discovery from Raphael Bastian, Gary Eakins, Mary Bastian, Greenberg Traurig & Hoffman, and Deloitte & Touche, Inc. Defendants assert that the relevant information and documentation are protected by the attorney-client, marital, or accountant-client privileges, and that Defendants are not entitled to receive the requested information or documentation.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

### I Findings of Fact

Southern Air Transport, Inc. ("Southern–Florida") was a Florida corporation operating an air cargo carrier division and a flight training facility. On or about August 28, 1997, Southern–Florida's business was restructured, resulting in the creation of a newly organized holding company, SAT Group, Inc. ("SAT Group"), and two wholly-owned subsidiaries, Southern Air Transport, Inc., a Nevada corporation ("Southern–Nevada" or "Debtor"), and SimuFlite Training International, Inc. ("SimuFlite").

Prior to the restructuring of Southern–Florida's business, James Bastian was the sole shareholder, director, chairman and chief executive officer of Southern–Florida. Mr. Bastian was responsible for the decision to restructure Southern–Florida, whereby SimuFlite received the assets of the flight training division, and Southern–Nevada received the assets of the air cargo division. There is no dispute that James Bastian directed the restructuring of Southern–Florida, the legal aspects of which were handled by Raphael Bastian and Gary Eakins, in-house legal counsel for Southern–Florida, both of whom also served as in-house legal counsel for SimuFlite and Southern–Nevada. Mr. Bastian's control of the enterprise was not impacted by the restructuring. In or about February 1998, SimuFlite was sold for approximately $108,000,000. These proceeds were paid to SAT Group, which subsequently transferred $50,000,000 to James Bastian. Thereafter, James Bastian transferred his portion of the SimuFlite sale proceeds to Mary Bastian, his wife.

Debtor filed for relief under Chapter 11 of the Bankruptcy Code on October 1, 1998. Debtor did not attempt to reorganize its affairs as an ongoing business, but has been in the process of liquidating its assets in an orderly fashion. Plaintiffs filed their Complaint to Avoid Fraudulent Transfers and Recover Property, To Recover Unlawful Dividend, For Injunctive and Declaratory Relief, Equitable Subordination or Recharacterization of Alleged Insider Debts, An Accounting, Imposition of a Constructive Trust, and Appointment of Receiver ("the Complaint") on February 26, 1999.

In relevant part, Plaintiffs assert that the corporate restructuring of Southern–Florida was a fraudulent scheme perpetrated by James Bastian. This scheme

allegedly involved the fraudulent transfer of valuable corporate assets in which this bankruptcy estate should have retained an interest, and allowed Mr. Bastian to receive unlawful dividends from the sale of one of the newly created subsidiary corporations. Plaintiffs contend that SimuFlite's value was improperly inflated by the restructuring, and Southern–Nevada's value was improperly deflated. As a result, the corporate restructuring was detrimental to Southern–Nevada and its creditors, and was a breach of Mr. Bastian's fiduciary duty to both.

The parties have engaged in significant discovery through the course of this adversary proceeding, but have reached an impasse regarding Plaintiffs' request for testimony from Raphael Bastian, Gary Eakins and Mary Bastian, as well as Plaintiffs' request for documentation from the law firm of Greenberg Traurig & Hoffman. Plaintiffs also anticipate the need for a ruling on whether information requested from the accounting firm of Deloitte & Touche should be protected from discovery based on the accountant-client privilege, though that has not yet become an issue in this case.

Raphael Bastian was the director of legal services and assistant corporate secretary of Southern–Florida prior to the 1997 corporate restructuring. Ms. Bastian apparently drafted and filed the corporate documents necessary for the restructuring, then served as in-house counsel for Southern–Nevada. Ms. Bastian, the daughter of defendant James Bastian, apparently has now been identified as the representative of SAT Group in this adversary action. Despite the fact that Ms. Bastian was employed and paid by Southern–Nevada after the 1997 restructuring, Defendants assert the attorney-client privilege in an effort to preclude testimony by Ms. Bastian. Defendants base the privilege on the allegation that Ms. Bastian was also serving as counsel for SAT Group and SimuFlite, and also held the position of corporate secretary for SAT Group. The attorney-client

privilege is being asserted only as to matters relating to Ms. Bastian's legal work for SAT Group and SimuFlite subsequent to the 1997 restructuring.

Gary Eakins is the former vice-president, general counsel and secretary of both Southern–Florida and Southern–Nevada. Mr. Eakins provided legal advice to Southern–Florida's air cargo and flight training divisions, as well as to James Bastian individually. After the 1997 restructuring, Mr. Eakins continued to provide legal advice to James Bastian, SAT Group and SimuFlite, despite being an employee of Southern–Nevada. As with Ms. Bastian, Defendants object to Mr. Eakins testifying as to any legal services he provided to SAT Group, SimuFlite or James Bastian after the 1997 restructuring of Southern–Florida.

Mary Bastian, the widow of defendant James Bastian, also was an employee of Southern–Nevada. Upon questioning by Plaintiffs at her deposition, counsel for Defendants interposed an objection based on the marital privilege with respect to any conversations that occurred between James and Mary Bastian, and instructed her not to answer any questions regarding the substance of such conversations. Plaintiffs recognize the existence of the spousal or marital privilege, but argue that under both Ohio and Florida law, a business or property exception applies, and nullifies the privilege.

Plaintiffs served a request for production of documents on the law firm of Greenberg Traurig & Hoffman ("Greenberg Traurig") for documents relating to both pre-restructuring and post-restructuring legal services rendered to either Southern–Florida, Southern–Nevada and/or SimuFlite. Greenberg Traurig had represented Southern–Florida prior to the restructuring, and represented SAT Group, SimuFlite and James Bastian in the sale of SimuFlite. Greenberg Traurig refused to produce documents based on the attorney-client privilege, including documents relating to the 1998 sale of Simu-

Flite. Plaintiffs note that Southern–Nevada's in-house attorney, Gary Eakins, worked closely with Greenberg Traurig with respect to the SimuFlite sale.

Finally, Plaintiffs commenced, but have not completed, the deposition of the accounting firm of Deloitte & Touche. Though it is not yet in issue, Plaintiffs anticipate receiving objections to requests for testimony or documentation from Deloitte & Touche based on the accountant-client privilege. Anticipating such objections, Plaintiffs request instruction from the Court as to whether such information and/or documentation is subject to discovery.

## II  Conclusions of Law

The Court is called upon to rule on Plaintiffs' request for: (1) testimony from Raphael Bastian and Gary Eakins; (2) testimony from Mary Bastian; and (3) testimony and/or documentation from Greenberg Traurig and Deloitte & Touche. The facts surrounding this discovery dispute are not commonly encountered. In this case, the privileges purportedly protecting information and documentation from discovery are being asserted by plaintiff Southern–Nevada's parent corporation (SAT Group), and by or on behalf of James Bastian (now deceased), its sole shareholder, director, and chief executive officer.

Plaintiffs argue that all requested information should be subject to discovery pursuant to *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub*, the Supreme Court held that a trustee of a corporation in bankruptcy has the authority to waive the debtor corporation's attorney-client privilege with respect to confidential communications occurring prior to the bankruptcy filing. Accordingly, the authority to assert and waive the attorney-client privilege inures to the benefit of the successor to the corporation. In *Weintraub*, the Commodities Future Trading Commission filed a complaint alleging violations of the Commodity Exchange Act by Chicago Discount Commodity Brokers ("CDCB"). CDCB ultimately filed a voluntary petition in bankruptcy, and its former attorney refused to testify pursuant to a subpoena, asserting CDCB's attorney-client privilege. The Chapter 7 trustee in *Weintraub* waived the attorney-client privilege, and the former counsel was compelled to provide the requested testimony. *Weintraub*, 471 U.S. at 354, 105 S.Ct. 1986.

Plaintiffs assert that they are entitled to control Southern–Florida's attorney-client, and any other related privileges. Plaintiffs point to Southern–Nevada's status as a debtor-in-possession, an analogous status to the bankruptcy trustee in *Weintraub*, as supporting their right to control the privilege. As such, Plaintiffs contend that the attorney-client privilege does not preclude their discovery of the requested information and/or documents.

Defendants assert that the *Weintraub* case has only limited applicability here. According to Defendants, *Weintraub* only ruled that a corporation's legal privileges are transferred when all of the corporation's assets are transferred. The ability to invoke or waive a corporation's privileges is therefore an incident of control of the corporation, and absent the transfer of control, Defendants argue that the privileges will not pass, citing *In re Grand Jury Subpoenas 89–3 & 89–4*, 734 F.Supp. 1207, 1211 (E.D.Va.), *aff'd* in part, vacated in part 902 F.2d 244 (4th Cir.1990); *Yosemite Invest., Inc. v. Floyd Bell, Inc.*, 943 F.Supp. 882, 883 (S.D.Ohio 1996); *Ramada Franchise Sys. v. Hotel of Gainesville Associates*, 988 F.Supp. 1460, 1463–64 (N.D.Ga.1997).

■ Defendants, in citing the above-referenced cases, erroneously attempt to analogize this case to those in which a part of a corporation was transferred to an unrelated entity. That analogy is not persuasive here, where Southern–Florida merely restructured into a new holding company and two wholly-owned subsidiaries, and where James Bastian's control of the over-

all enterprise remained the same. Mr. Bastian also interchangeably used the same in-house counsel for the restructuring and post-restructuring legal services for each of the entities. The Court does not share Defendants' view as to the limited applicability of *Weintraub*. The Court agrees that a corporate fiduciary is precluded from asserting privileges to protect his own interests that are adverse to those of the corporation. *Weintraub*, 471 U.S. at 349, 105 S.Ct. 1986. Corporate officers must "exercise the privilege in a manner consistent with their fiduciary capacity to act in the best interests of the corporation and not of themselves individually." *Weintraub*, 471 U.S. at 349, 105 S.Ct. 1986.

■ James Bastian, Raphael Bastian, and Gary Eakins each were fiduciaries of both Southern–Florida and Southern–Nevada. It would be improper to allow Defendants to preclude Southern–Nevada from obtaining testimony from its own attorneys and officers. Those individuals could not possibly separate themselves from their duty towards Southern–Nevada in order to assert the privilege on behalf of Southern–Florida or SAT Group. *See, In re Diasonics Securities Litigation*, 110 F.R.D. 570 (D.Colo.1986). In *Diasonics*, corporate officers of both a former parent and a subsequently divested subsidiary attempted to assert the attorney-client privilege against shareholders of the former parent. The relevant conversations took place with the counsel that represented the subsidiary in the sale of the subsidiary, and concerned the possible rescission of the sale. *Diasonics*, 110 F.R.D. at 571–74.

The *Diasonics* court stated that officers of both entities could not separate their status in a manner that would allow the privilege to be asserted. *Diasonics*, 110 F.R.D. at 574. The relevant communications were made when the officers had fiduciary duties to the former parent and its shareholders, and "[a] fiduciary cannot turn his responsibilities on and off like a faucet.... As long as that duty existed, so did the concomitant interest of the ...

shareholders in knowing his legal communications concerning the future of their company." *Diasonics*, 110 F.R.D. at 574, quoting *Bailey v. Meister Brau, Inc.*, 55 F.R.D. 211, 214 (N.D.Ill.1972).

■ Integral to establishing the existence of the attorney-client privilege is evidence that the relevant communications between attorney and client were intended to be confidential. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172 (S.D.Ohio 1993). Mr. Bastian's use of Southern–Nevada's in-house counsel for the restructuring precludes Defendants from asserting that any communications involving Raphael Bastian or Gary Eakins are protected. As counsel to and officers of Debtor, it would be anomalous for Raphael Bastian and Gary Eakins to be precluded from providing information gained while so employed by Debtor. Under such circumstances, there could be no reasonable expectation that any communications involving Raphael Bastian or Gary Eakins were intended to be confidential, at least with respect to Debtor. This ruling applies to communications made both before and after the restructuring, and specifically includes any communications made concerning the sale of SimuFlite.

■ The right of a successor entity to claim the attorney client privilege must be determined in light of the surrounding circumstances. *Ramada Franchise*, 988 F.Supp. at 1464. Parent and subsidiary corporations generally share a common interest, and may, in appropriate circumstances, be considered a single client for purposes of the attorney-client privilege. *The Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 472 (W.D.Mich.1997). In *Glidden*, the parent corporation instituted a breach of fiduciary duty action against corporate officers of a subsidiary regarding a management buyout of the subsidiary. The officers attempted to withhold documents from discovery based on the theory that the new company, post buyout, succeeded to the privileges of the former subsidiary.

The *Glidden* court disagreed, stating that it would be "perverse" for the privilege to be asserted against the former parent. *Glidden*, 173 F.R.D. at 474.

The ruling in *Glidden* is consistent with other cases where parent and subsidiary corporations have been considered joint clients for purposes of the attorney-client privilege. In *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F.Supp. 841 (N.D.Ill.1988), Baxter sold its wholly owned subsidiary, Medcom, Inc., to Medcom Holding Co. Medcom Holding Co. asserted fraud in the sale of Medcom, Inc. During the ensuing lawsuit, Medcom, Inc. moved to compel production of communications between its officers and employees, and attorneys in Baxter's legal department. The relevant communications relate to the sale of Medcom, Inc., and predate the sale. Baxter asserted the attorney-client privilege and refused to produce information relating to the sale of Medcom, Inc.

The *Medcom* court found that Baxter did not have the exclusive control of the attorney-client privilege because employees of Medcom, Inc. received legal advice from Baxter's in-house legal department. Since the relevant communications were made on behalf of both parent and subsidiary, both entities had a right to waive the attorney-client privilege, and both parties had a right to obtain the relevant information. *Medcom*, 689 F.Supp. at 844. *See also, Bass Public Ltd. Co. v. The Promus Companies, Inc.*, 868 F.Supp. 615, 620 (S.D.N.Y.1994) (a "joint attorney-client privilege" exists between parent and subsidiary corporations despite a corporate merger). Finally, the communications at issue did not arise in the preparation of a common defense, or anticipation of impending litigation, and therefore were not protected by the joint privilege over defense material. *Medcom*, 689 F.Supp. at 846. The joint privilege over defense material is similarly not applicable to the facts currently before this Court.

### A. Raphael Bastian and Gary Eakins.

With respect to the information requested from Raphael Bastian and Gary Eakins, the Court finds that the Motion is well taken and should be granted. Both Raphael Bastian and Gary Eakins were employed by Southern–Nevada as officers and in-house counsel after the 1997 restructuring. The Court finds it most troubling that Defendants assert that Southern–Nevada is unable to obtain testimony from its own counsel. Indeed, the apparent lack of any regard for the distinctions between the various corporate entities makes it nearly impossible to conceive of a scenario in which Plaintiffs are not able to obtain all requested information from Raphael Bastian and Gary Eakins.

This case does not involve the sale of part of a corporate entity to an unrelated party, with the unrelated party seeking to preclude discovery for post-sale transactions. To the contrary, this is a scenario involving a closely-held corporation under the control of James Bastian, who apparently felt free to seek advice and obtain work product from attorneys on the payroll of one subsidiary corporation for matters pertaining to the parent company, or another subsidiary corporation. Southern–Florida (and later SAT Group) was, in effect, an enterprise comprised of the air cargo and flight training functions. Despite the corporate structure, the entire enterprise always was controlled by James Bastian.

■ While the Court does not find it necessary to determine whether Debtor succeeds to all privileges of Southern–Florida, it can and will make specific rulings as to the testimony and documentation currently at issue, and the waiver of any privilege. It is axiomatic that a legal department acting as counsel for a multi-faceted enterprise cannot withhold information, based on the attorney-client privilege, from one of the members of that enterprise. *In re Santa Fe Trail Transportation Co.*, 121 B.R. 794 (Bankr.N.D.Ill. 1990) (even after the sale of a subsidiary of

an enterprise, the former subsidiary in entitled to discovery from its former parent of documents prepared prior to the sale where attorneys acted for the entire enterprise).

In light of the circumstances surrounding the restructuring, especially the retention of control of the post-restructuring entities by Mr. Bastian, and the use of a common legal department by all such entities, the Court finds that Defendants have no viable objection to testimony by Raphael Bastian or Gary Eakins based on the attorney-client privilege. *Ramada Franchise, supra.* Whether Debtor was a transferee, or obtained "control" of Simu-Flite or SAT Group are not the relevant inquiries. Rather, the most relevant fact is that the "restructuring" did not result in any real change in control of the overall enterprise. Mr. Bastian controlled Southern–Florida, and Mr. Bastian controlled SAT Group and its subsidiaries. Mr. Bastian was responsible for the decision to restructure the enterprise, and to use attorneys that advised the enterprise as a whole.

As Plaintiffs note in their reply to Defendants' opposition to the Motion, "[t]o advance the Defendants' theory that the privilege of Southern–Florida did not pass [to] Southern–Nevada for all purposes is to say that anyone in control of a corporate enterprise may bury harmful information possessed by its lawyers merely by reshuffling the corporate structure." Such a possibility would allow management that wrongly diverted corporate assets to use the privilege as a shield against a bankruptcy trustee's (or debtor-in-possession's) efforts to identify and recover those assets for the benefit of the estate. This would thwart the bankruptcy code's mechanism for uncovering and undoing insider fraud. *Weintraub,* 471 U.S. at 353–54, 105 S.Ct. 1986.

### B. Mary Bastian.

■ With respect to Mary Bastian, it is possible that the spousal or marital privilege will not apply to communications regarding the business of Southern–Florida, or its post-restructuring counterparts. The Bastians resided in the state of Florida, and Florida law should apply for application of the spousal privilege. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife." Fla. Stat. § 90.504 (1999).

■ Without question, any communications between Mr. and Mrs. Bastian regarding their personal affairs should remain confidential. However, any ordinary conversations regarding business matters are not subject to the privilege unless circumstances show the conversations to have been confidential in nature. *Hanger Orthopedic Group, Inc. v. McMurray,* 181 F.R.D. 525, 530 (M.D.Fla.1998). *See generally,* 81 Am.Jur.2d, *Witnesses,* § 336. Accordingly, Mrs. Bastian must testify as to any business related conversations with Mr. Bastian regarding Southern–Florida, or any of the post-restructuring entities. This is particularly reasonable in light of Mrs. Bastian's status as an employee of Southern–Florida or Debtor. These facts effectively rebut the presumption of confidentiality. *McMurray,* 181 F.R.D. at 530. *See generally,* 81 Am.Jur.2d, *Witnesses,* §§ 310 and 311.

It would be improper to shield non-confidential conversations between "business associates" about business matters solely based on the fact that the "business associates" are also married. However, if the conversations only took place based on the marital relationship, the privilege will apply to those conversations. As the record currently stands, there is no basis for Defendants to assert the marital privilege to preclude the requested testimony from Mrs. Bastian.

### C. *Greenberg Traurig & Hoffman.*

█ With respect to the Greenberg Traurig documents, as with the testimony of Raphael Bastian and Gary Eakins, the Court finds that the documentation is subject to discovery by Plaintiffs. Greenberg Traurig worked closely with Debtor's in-house counsel, Gary Eakins, with respect to the SimuFlite sale subsequent to the Southern–Florida restructuring. It is unreasonable for Defendants to assert the attorney client privilege in a manner that precludes Debtor from obtaining testimony and/or documentation for matters in which its own in-house counsel participated.

If Defendants intended to maintain the confidentiality of the communications with, or documents obtained or prepared by its outside counsel, they should not have made that information available to Debtor's in-house counsel. From Mr. Eakins' deposition testimony, it is clear that he worked closely with Greenberg Traurig, and had access to information in that firm's possession. Accordingly, Defendants have effectively waived any possible privilege with respect to the Greenberg Traurig firm, and that firm must respond to Plaintiffs' discovery requests, and immediately produce the documents on the privilege log.

### D. *Deloitte & Touche.*

With respect to the Deloitte & Touche matter, the Court is not inclined to issue an advisory opinion as to whether information or documents in the possession of the accountant for Southern–Florida are discoverable by Plaintiffs. A discovery dispute concerning that issue is not yet before the Court. However, the Court would expect the parties to finalize their exchange of discovery consistent with this ruling on the Motion.

*Fraud Exception to the Attorney–Client Privilege.*

█ Finally, Plaintiffs argue that Defendants engaged in "fraud, a looting scheme, and misappropriation of corporate assets", thereby making the attorney-client privilege unavailable. Plaintiffs presumably request the Court to rule that the attorney-client privilege does not apply under the crime-fraud exception, but have not briefed that issue. Where an attorney is used in the perpetration of a crime or fraud, there is no basis for allowing the assertion of the privilege. *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir. 1986). For the fraud exception to apply: (1) a *prima facie* case must be presented that a fraud has occurred; and (2) there must be a connection between the privileged communications at issue and the *prima facie* violation. *Antitrust Grand Jury,* 805 F.2d at 164.

While it appears that the factors set forth in *Antitrust Grand Jury* may exist here, Plaintiffs have neither briefed, nor placed any evidence in the record which would support the use of this argument as a basis for nullifying the attorney-client privilege. Accordingly, the Court will not rule on the issue of the fraud exception to the privilege.

### III *Conclusion*

For the foregoing reasons, the Court finds that the Motion is well taken, and is hereby GRANTED. The attorney-client privilege does not preclude Plaintiffs from receiving responses to the requests for testimony and/or documentation addressed to Raphael Bastian, Gary Eakins, Mary Bastian and the law firm of Greenberg Traurig & Hoffman. All requested documentation must be produced forthwith, and all requested testimony must be provided at the earliest possible time. The issue of the accountant-client privilege, if any, is not currently before the Court, and no ruling will be made on that issue at this time.

IT IS SO ORDERED.