In re SANTA FE TRAIL TRANSPORTATION COMPANY and BN Transport, Inc., Debtors.

Nathan YORKE, Trustee, Plaintiff,

v.

SANTA FE INDUSTRIES, INC. et al., Defendants.

Nos. 85 B 8425, 85 B 10719.
Adv. No. 87 A 1252.

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 23, 1990.

Jerome B. Meites, of McDermott, Will & Emery, Chicago, Ill., for plaintiff.

David C. Gustman and Andra K. Heller, of Freeborn & Peters, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on the motion of the Plaintiff, Nathan Yorke ("Yorke" or "Trustee"), as Trustee of the Debtor, Santa Fe Trail Transportation Company ("Debtor" or "SFTT"), for production of certain documents from the defendant, Santa Fe Industries, Inc. ("SFI" or "Defendant"). On May 11, 1989, the Trustee moved to compel SFI to produce certain documents which it had withheld on the grounds of the attorney-client privilege and the work-product doctrine ("Motion to Compel"). Pursuant to an Order dated February 15, 1990, documents were presented to the court by the SFI, for *in camera* inspection to determine whether the attorney-client privilege and the work-product doctrine preclude the production of these documents to the Trustee. For the reasons set forth herein, having considered the documents produced, the statements supplied by SFI as to why the attorney-client privilege or work-product doctrine precludes production of these documents to the Trustee, and the arguments of counsel

for both the Trustee and SFI, including the response to the Order dated June 8, 1990, the court grants the motion as to all of the submitted documents that were produced prior to or on July 6, 1984 (the date of the closing of the sale of the stock of SFTT, hereinafter "Closing") and to documents prepared after July 6, 1984, as hereinafter set forth.

## I. FACTS NECESSARY TO DECISION

Prior to discussing the application of the attorney-client privilege and the work-product doctrine to this proceeding and to the documents at hand, it is important to note the relationship of the parties involved in this adversary proceeding.[1] Prior to July 6, 1984, SFTT was a wholly-owned subsidiary of SFI. On July 6, 1984, SFI sold the stock of SFTT to SFTT, Inc. ("SFTT, Inc."), which was owned by Avery Eliscu and Leonard Lewensohn.[2] It is undisputed that SFI's legal department was counsel to both the parent SFI and the subsidiary SFTT prior to the Closing. (See discussion commencing on page 4.)

On July 3, 1985, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against SFTT.[3] On August 20, 1985, the SFTT case was converted to one under Chapter 11 of the Bankruptcy Code, and the Debtor remained in possession operating its business. On January 6, 1986, Yorke was appointed Trustee.

On January 20, 1986, the SFTT case was re-converted to a Chapter 7 case and on January 21, 1986, Yorke was appointed Trustee under Chapter 7 of the Bankruptcy Code.

On December 31, 1987, Yorke filed a complaint entitled "Trustee's Complaint to Avoid Fraudulent Transfers and for Other Relief" ("Complaint"). The Complaint named two defendants but only SFI re-

---

1. The question of liability will ultimately be decided in this case but at a later date. Any discussion of facts herein in no way affects the ultimate finding of facts and any judgment of liability which may be made.

2. In SFI's Answer and Affirmative Defenses to Trustee's Complaint to Avoid Fraudulent Transfers and for Other Relief ("Answer"), SFI admits

that in July of 1984 it closed the sale of the stock of SFTT to Rail Services, Inc., not SFTT, Inc. *See* Answer, ¶ 13.

3. 11 U.S.C. § 101 *et seq.* All reference sections are to the Bankruptcy Code unless otherwise noted.

mains.[4] On March 8, 1988, SFI filed its Answer and Affirmative Defenses. Since that time there has been a multitude of discovery disputes. In a Memorandum Opinion dated February 15, 1990, this court ruled on Yorke's motion to strike supplemental affidavits of Jerome F. Donohoe ("Donohoe") and David L. Hicks ("Hicks"), which were submitted by SFI to support its claim of privilege, and for an order requiring immediate production of other documents. The court denied the motion as to striking the supplemental affidavits, but granted the motion with respect to the immediate production of certain documents. The documents produced directly to Yorke's attorneys were documents received by or directed to Mr. Nassimbene (president of SFTT prior to the Closing) and Mr. Shirey (treasurer of SFTT prior to the Closing) in their capacities as officers of another subsidiary of SFI.

The court, after several conferences with counsel, directed SFI to turn over the following documents to the court for *in camera* inspection:

(1) Forty-three documents from Exhibit G of the Motion to Compel:

(2) Three documents from Exhibit C of the Motion to Compel (dated May 7, 1984; January 18, 1985; and July 6, 1984);

(3) Handwritten notes prepared by Hicks from Exhibit D of the Motion to Compel; and

(4) Documents listed in Exhibit E of the Motion to Compel to which Donohoe was a party.

SFI has presented to the court for *in camera* inspection these documents which are contained in three binders. (Hereinafter, the three volumes will be collectively referred to as "Documents.")

This Motion to Compel presents a unique question which is apparently of first impression. The question is whether the attorney-client privilege and work-product doctrine apply to a corporate subsidiary and its parent where the subsidiary after it has been sold seeks the disclosure of documents of its former parent prepared prior

to the sale and related thereto. These documents belong to the parent. Neither counsel for the Trustee, counsel for SFI nor this court has found any case law that responds to this question. There are many cases that examine the application of the attorney-client privilege with respect to the purchaser of the former subsidiary in a suit against the former parent or in a derivative law suit but these do not shed light on this question.

## II. DISCUSSION

The court has examined the Documents delivered for inspection, as well as the affidavits of both Donohoe and Hicks. The Donohoe affidavit sheds a great deal of light on what has become a perplexing problem.

Donohoe's affidavit discloses that at all times he was either the head of the SFI Law Department as Vice President of Law or a senior member of the SFI Law Department as General Counsel for Corporate Affairs. As the Vice President of Law, he was directly responsible for advising the senior management of SFI and its affiliates, which included SFTT, in regards to all pending legal matters. As the General Counsel for Corporate Affairs, he reported to the Vice President of Law and was responsible for the Corporate Group of SFI's legal department. As head of this group, he advised the senior management respecting all pending corporate matters. (It is presumed that "senior management" includes the senior management of both SFI and its affiliates.)

The affidavit further noted that *at all relevant times the law department was the primary source of legal services rendered to SFI and its subsidiary companies, including SFTT, until SFI sold all of the stock of SFTT.* (*See* Affidavit of Donohoe, June 23, 1989, pp. 2–3, ¶¶ 2–5). Thus, SFI acknowledges that until the completion of the sale of the stock of SFTT, the legal department of SFI was also the legal department of SFTT and of SFI's other affiliated entities. In effect, the legal de-

---

4. On January 18, 1990 (entered on the docket February 2, 1990), the action was dismissed as to defendant CFC Capital Corporation, formerly known as Interfinancial Corporation.

partment of SFI acted as the lawyers for the entire enterprise.

Many problems have arisen within the realm of this bankruptcy case, not the least of which is the claim of the attorney-client privilege and work-product doctrine made on behalf of the law department of SFI. As previously stated, SFI complied with the February 15, 1990 Order and presented to the court for *in camera* inspection the Documents which it claims are privileged.

---

The court will first consider the question of the disclosure of the Documents prepared prior to and including July 6, 1984, the date of the Closing of the sale of the stock of SFI's subsidiary SFTT. During this time period, both corporations, SFI and SFTT, were represented by the same counsel. Next, the court will consider the Documents originating after such date.

## A. DOCUMENTS PRODUCED PRIOR TO OR ON THE DATE OF CLOSING

 The court is of the opinion that the claim of attorney-client privilege or work-product doctrine for this first group of Documents to be non-existent. One should not lose sight of the fact that Yorke's action against SFI is brought on behalf of the Debtor, SFTT, and not on behalf of any particular creditor, group of creditors or on behalf of the owners of the Debtor (that is, its current shareholders). The plaintiff in this action is SFI's former subsidiary, SFTT. To put this in proper perspective, the former child is suing its former parent.

The child and the parent were represented by the same lawyers, not by choice of the child but by choice of the parent. There were lots of children and the family was, by and large, represented by this one group of lawyers who were controlled by the parent. It now has come to pass that the child sent away for a price has come home to question certain actions of its former parent arising at or about the time the child was sent away.

The lawyers who represented both parent and child prior to the child's banishment and who continue to represent the parent now claim that what they did prior to the child's separation (the Closing of the sale of the stock of the Debtor and other related matters) should not now be disclosed to the child's lawyer.

Counsel for SFI has argued that the general counsel's office of SFI is similar to that of a law firm engaged in the private practice of law. SFI claims that the in-house counsel for SFI was in actuality representing two independent clients-SFI and SFTT. In private practice it is axiomatic that the confidences of one client cannot be disclosed to another. *See Model Code of Professional Responsibility* DR 4–101 (1980). Counsel for SFI is in effect arguing that what was disclosed by SFTT to the Vice President of Law of SFI was held confidential by him and not disclosed to his other clients, including his employer SFI. This is blantantly wrong. One need go no further than to state that the disclosure was made by SFTT to an agent of a third party, an officer of SFI, and thus no confidentiality can exist. Disclosure to a third party destroys the attorney-client privilege.

Now it is true that the Vice President of Law was acting in a dual capacity. He was SFI's lawyer and an officer owing a duty of loyalty to SFI as SFTT's lawyer. Clearly, what he knew as SFTT's lawyer was disclosed to SFI. The court believes that this should, in and of itself, put an end to this claim of privilege between SFTT and SFI at the time of the joint representation.

Perhaps we are again visiting the relationship of the parent to the subsidiary and the maintenance of the separatism required to preserve their individuality. The court will not explore the question of whether the subsidiary's use of the parent's lawyer destroys the distinction between parent and subsidiary. It is not pertinent to this inquiry. However, having one general counsel for the enterprise is without question destructive of this individuality. The court understands that one of the prime reasons for subsidiaries is to insulate each from the other's liabilities. (Note the use of the words "each from the other's"—if there is a lumping of the assets and liabilities, not only is the parent responsible for the sub-

sidiary's debts, but the subsidiary is responsible for the parent's debts.) Perhaps each corporation should have had independent counsel.

In *Medcom Holding Co. v. Baxter Travenol Laboratories*, 689 F.Supp. 841 (N.D. Ill.1988), the district court addressed the issue of whether an acquiring corporation controlled a subsidiary's privilege with respect to attorney-client communications occurring prior to and relating to the sale of a subsidiary's stock from its former parent to an acquiring corporation. The district court stated that Magistrate Weisberg correctly concluded that Medcom Holding Company (purchaser, hereinafter "Medcom Holding") controlled Medcom, Inc.'s (former subsidiary, hereinafter "Medcom") privilege with respect to the attorney-client communications between officers and employees of Medcom and attorneys of Baxter Travenol Laboratories, Inc. (former parent, hereinafter "Baxter") occurring prior to or relating to the sale of Medcom. 689 F.Supp. at 844. *See In re Sealed Case*, 120 F.R.D. 66 (N.D.Ill.1988). The district court decided that Medcom's attorney-client privilege with respect to communications between its officers and attorneys who represented both Medcom and Baxter in the sale of Medcom to Medcom Holding transferred to Medcom Holding with the stock of Medcom.

*Medcom Holding* is factually different and provides little help in solving the questions concerning the issues raised by the pending matter. In *Medcom Holding*, the purchaser of the subsidiary desired to waive the attorney-client privilege and sought production of certain documents in the hands of the former parent. In the present case, the situation is more compelling than the one in *Medcom Holding* in that the former parent and subsidiary never intended for the attorney-client privilege and work-product doctrine to apply to their existing relationship.

The representation of SFI and SFTT by the same counsel prior to the Closing closely resembles that of a joint representation. The Model Code of Professional Responsibility provides that an attorney may continue multiple employment until,

> the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

*See Model Code of Professional Responsibility* DR 5–105(B) (1980). This rule allows an attorney to continue jointly representing clients until the representation of one client would adversely affect his duties and responsibilities to another client. It is clear that,

> [W]hen two or more persons, each having an interest in some problem or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is with parties claiming adversely to both or either of those within the original charmed circle. But it will often happen that the two original clients will fall out among themselves and become engaged in a controversy in which the communications at their joint consultation with the lawyer may be vital material. In such a controversy it is clear that the privilege is inapplicable.

T. Morgan & R. Rotunda, *Problems and Materials on Professional Responsibility* 188 (3rd. ed. 1984) *quoting McCormick on Evidence* § 91 at 189 (footnote omitted) (2nd. ed. 1972).

SFI's in-house counsel served as counsel for both SFI and SFTT prior to the sale of SFTT. It is clear to the court that during those days prior to the Closing no one in the legal department of SFI thought in terms of the privilege as respects SFI and SFTT or intended for the privilege to exist as between SFI and SFTT. (*See* Affidavit of Donohoe). The claim of privilege as to those outside the family is a totally different problem.

SFI made a conscious choice to have separate entities within its family and to have these separate entities represented by its

lawyers. The officers of these separate corporations must have consented to this arrangement either by inaction or by taking advantage of the counseling provided by the legal department. The lawyers as officers of the parent SFI must also be deemed to have consented to this arrangement by their actions. If indeed there was ever an intent that a privilege exist, once the controversy arose between the jointly represented parties (SFI and SFTT) that the privilege could not be claimed for the period prior to the Closing. SFI does not now have the power or authority to withhold the Documents prepared on or before the Closing and prevent the Trustee from examining them.

Moreover, what went on before the Closing must be disclosed if for no other reason than the fact that SFI's lawyers know all about SFTT before the Closing and so should the lawyers for SFTT know all about SFI.[5]

## B. DOCUMENTS PRODUCED AFTER THE CLOSING DATE

A more perplexing problem is the privilege claim of SFI for the Documents produced after the Closing. Again, the court must remain aware that this is not a lawsuit of the purchaser of SFTT's stock making this request but that of SFI's former subsidiary for a claim arising out of the sale and the Closing. Counsel for SFI claims these documents are sacrosanct for the same reasons as stated previously: attorney-client privilege and work-product doctrine. To the extent that any Document contains information or is based in part on information existing at or before the Closing, it appears to the court that it should be disclosed, but only to that extent. If a Document dated after the Closing either relates to a matter existing at or prior to July 6, 1984, or if it relates to a matter performed by SFI consistent with its obligations under the sale agreement and consistent with SFI's understanding of its responsibilities under such agreements, it should be disclosed. However, to the ex-

tent that such Documents discuss or relate to SFI's possible liability to the purchasers of the Debtor's stock, that part of a Document need not now be disclosed. Any Document submitted for *in camera* inspection pursuant to the Order of February 15, 1990 which was originated after the Closing will be re-examined by counsel for SFI and re-submitted *in camera* with counsel's claim of privilege consistent with this Memorandum Opinion.

One more knotty question is whether the matters of settlement between SFI and the Debtor's purchasers should be disclosed. The court was of the opinion that matters arising after the closing date of July 6, 1984, could be claimed as privileged by SFI's in-house counsel. However, the Documents requested, to the extent that they relate to meetings with third parties and which purport to report on such meetings, should be disclosed. The settlement in question concerns the purchase price paid for the Debtor, which is a suit belonging to the purchasers of the Debtor and not the Trustee, and not how it was paid. If the Trustee is to examine such Documents, he must maintain a confidentiality concerning them. The Trustee's counsel ought to be able to examine these Documents since they relate to matters which were in existence at the time of Closing, however the court will not order such disclosure until it has heard argument.

## III. CONCLUSION

The court answers the questions presented in terms of "privilege." Yet, it has been difficult to apply the attorney-client privilege and work-product doctrine to the facts. As the saying goes, "you can't put a square peg in a round hole." It is obvious to the court that there was never a thought of the attorney-client privilege or work-product doctrine by the in-house lawyers working for this business enterprise respecting SFI and its affiliates, including of course SFTT. SFTT was just part of the corporate family. No one has suggested

---

5. After a controversy arises in a joint representation, the attorney who did so would no longer

represent any one of the jointly represented parties.

and such a suggestion would be ludicrous that disclosures by SFTT to Donohoe would be held in confidence from SFI or any of the other affiliates represented by SFI's in-house counsel.

For the foregoing reasons, the court grants the motion in part to compel the production of all Documents that originated prior to or on July 6, 1984 and to Documents prepared after July 6, 1984 only to the extent that the Documents contain information or are based on information existing at or before the Closing of the sale of the SFTT stock. Any Document submitted for *in camera* inspection pursuant to the Order of February 15, 1990 which was originated after the Closing will be re-examined by counsel for SFI and re-submitted *in camera* with counsel's claim of privilege consistent with this Memorandum Opinion. A hearing will be held on September 27, 1990 at 9:30 a.m. in courtroom 1690, 219 South Dearborn, Chicago, Illinois, so that counsel will have the opportunity to address the issue of whether the Documents relating to settlement will be disclosed to the Trustee.