**In the Matter of The CELOTEX CORPORATION, et al.,
Debtors.**

**The ASBESTOS HEALTH CLAIMANTS' COMMITTEE and The Official Trade Creditors' Committee for the Use and Benefit of The Celotex Corporation, Plaintiffs,**

v.

**JASPER CORPORATION, The Jim Walter Corporation, JWC Holdings Corporation, The Center for Applied Engineering, Jim Walter International Corporation, Apache Products Company, Walter F. Johnsey, and William B. Long, Defendants.**

Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.
Adv. No. 95–0522.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 17, 1996.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for debtors.

H.C. Goplerud, Harry Christopher Goplerud, P.A., Tampa, FL, for plaintiffs.

Michael B. Colgan, Hoyt, Colgan & Andreu, P.A., Tampa, FL, Daniel J. Mulholland, Forman, Perry, Watkins & Krutz, Jackson, MS, for defendants.

John W. Kozyak, Kozyak Tropin & Throckmorton, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Tampa, FL, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

Sheldon S. Toll, Honigman Miller Schwartz and Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

David S. Shrager, Shrager, McDaid, Loftus, Flum & Spivey, Philadelphia, PA, Legal Representative for Unknown Asbestos Bodily Injury Claimants.

Sara Kistler, United States Trustee, Tampa, FL.

## ORDER ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon Plaintiff's Motion to Compel Production of Documents in the above captioned adversary proceeding. This Court has considered all arguments and evidence, together with the record, and finds:

The parties to this lawsuit are all entangled in the general bankruptcy case. Plaintiffs, Creditor Committees in the general case, filed this adversary proceeding for the use and benefit of the Celotex Corporation, Debtor in the general case. The original Plaintiffs to this action were the Asbestos Property Damage Claimants' Committee and the Asbestos Health Claimants' Committee. A year after this adversary proceeding was filed, the Property Damage Committee withdrew without prejudice. This Court granted the Official Trade Creditors' Committee's Motion to Intervene, making them a Plaintiff as well.

The Defendants include Jasper Corporation and The Jim Walter Corporation (JWC), who are insiders in the general bankruptcy case, see 11 U.S.C. sections 101(31)(B), and are often referred to as "Equity" in this litigation because they propose to be 80% owners of the reorganized Celotex under Debtor's proposed plan of reorganization. The Debtor, the Celotex Corporation, is a wholly owned subsidiary of Jim Walter Corporation. Celotex is not a named party to this action. Overshadowing this proceeding is Plaintiffs' ongoing affray with the Debtor in the general bankruptcy case. The Plaintiffs' opposition bears direct relationship to their strategy herein.

### Background

Deciding whether to permit discovery of the ten documents in this adversary proceeding cannot be made without acknowledging the existence, and the posture, of the general bankruptcy case. The documents in question were prepared by Debtor's financial consultants and counsel. The general case is coming to confirmation and the documents sought pertain specifically to the formulation of the plan of reorganization proposed by Debtor. Debtor's plan is not only opposed by Plaintiffs, but the Health Claimants' Committee has continuously sought to end Debtor's exclusivity and to promote competing plans, even on the eve of promulgation of the Debtor's approved disclosure statement and plan, and solicitation of ballots.

### The Documents

The Court reviewed the documents in camera. Two of the documents comprise, in two

parts, an earlier draft of the Company Valuation Analysis by Debtor's expert, Alex. Brown & Sons. The final report is available to the movants in the general case, but Plaintiffs' seek to discover the earlier draft in this adversary proceeding. Another document is a letter from Alex. Brown & Sons, Inc. to the Celotex Board of Directors updating the valuation analysis.

A total of four documents are from Chambers Associates Incorporated. Three of these pertain to the structure of the trust fund—the key feature in Debtor's proposed plan of reorganization. The remaining memorandum pertains to plan balloting issues. Two of the remaining documents are drafts of a letter from Celotex Counsel, Bush Ross Gardner Warren & Rudy, P.A. to Robert Drain, Esq. (counsel for a Walter Industries' bondholders group) concerning the Veil Piercing Settlement Agreement (VPSA). The final document is a memorandum concerning 11 U.S.C. 524(g) issues, which is directly related to the VPSA and confirmation. Again, the documents all pertain to issues surrounding the ongoing confirmation battle in the general bankruptcy case.[1]

### The Attorney Client Privilege

■ The application of the attorney-client privilege is determined on a case-by-case analysis. *Upjohn Co. v. United States,* 449 U.S. 383, 396, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981). Application of an evidentiary privilege must promote interests important enough to "outweigh the need for probative evidence." *University of Pennsylvania v. Equal Employment Opportunity Commission* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990) (determining not to create an evidentiary privilege for peer review materials). The Court recognizes these privileges should be strictly construed. *See id.* The Defendants assert an attorney-

client privilege in all ten of the documents at issue.

### The Work Product Doctrine

■ The United States Supreme Court first recognized the work product doctrine in *Hickman v. Taylor,* 329 U.S. 495, 508–11, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). The Doctrine is not coterminous with the attorney-client privilege; it may protect information from discovery that falls outside the attorney-client privilege. *See id.* at 508, 67 S.Ct. at 392. The doctrine protects from discovery "... the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." **Fed.R.Civ.P.** 26(b)(3); **Fed.R.Bankr.P.** 7026. The Defendants assert work product protection for eight of the ten documents. The Defendants do not assert work product protection for the Alex.Brown & Sons draft report.

### Argument and Analysis

■ The documents in question are not discoverable in this adversary proceeding. The documents were prepared postpetition as relates to matters in the general bankruptcy case. This adversary proceeding deals with alleged pre- and postpetition transfers between Debtor and Defendants.[2] There is no showing these documents are direct evidence of any transfer. Indeed, they are direct evidence of Debtor's professional activities associated with the general case.

■ Plaintiffs' assert any attorney-client privilege in these documents has been waived because Celotex revealed the documents to Jim Walter Corporation and its counsel, i.e. a third-party. To support this argument, Plaintiffs refer to *Hillsborough Holdings Corp. v. The Celotex Corp. (In re Hillsborough Holdings Corp.),* 132 B.R. 478, 480 (Bankr.M.D.Fla.1991). The *Hillsborough*

---

**1.** The allegations in this adversary proceeding primarily concern alleged fraudulent transfers under 11 U.S.C. sections 544, 548, 549, & 550, **Fl.Stat.** Ch. 726.101–.201 (Uniform Fraudulent Transfer Act), and an alleged conspiracy to commit fraudulent transfers, breach of fiduciary duty by controlling shareholders and post-petition majority directors. *See* Second Amended Complaint. The Court decides the issue at hand on

the basis of privilege, without reaching the question of whether the documents pertain to the adversary proceeding. However, the Court notes there has been no showing these documents are in any way related to the subject matter of this adversary proceeding.

**2.** *See supra* note 1 and accompanying text.

*Holdings* court determined documents prepared by the legal department at JWC pertained to accounting and insurance planning, rather than legal representation. *See id.* In determining the privilege in the documents had been waived, the court stated "... some of these documents were communications to Celotex and Carey, third parties who were not the clients of the authors of the communications. This, of course, automatically destroyed the confidential nature of the communications which is indispensable to the privilege claimed." *Id.*

After careful review of the case, this Court finds while the *Hillsborough Holdings* Court made specific findings regarding several batches of documents, none of those documents are in the same category as those reviewed on this motion. *See id.* at 479–81. Specifically, none of the documents in question in the *Hillsborough Holdings* case were prepared in anticipation of litigation ongoing in either the adversary proceeding or the general bankruptcy case. In direct contrast, the documents herein were all prepared in connection with the general bankruptcy case. The facts of the *Hillsborough Holdings* case are completely distinguishable from those of the case at bar.[3]

Within the context of these documents, to hold Jasper and Jim Walter Corporation are third parties as to Celotex requires this court to engage in a fiction. Such legal myopia will not be indulged. These documents, their transmittal, and ultimate relevance, are found in the general bankruptcy case. Production of these documents in the adversary proceeding cannot be divorced from the documents' origination in the general bankruptcy case. Further, the Court determines the remaining documents fall under the broader rubric of the work product doctrine as asserted by Defendants. This Court sees no other reasonable interpretation after review of the documents and consideration of the facts surrounding the parties to this case.

The Court notes the irony of Plaintiffs' argument if the situations were reversed. Plaintiffs' argue sharing information with separate parties in this case—even when those parties share a common interest in the information and the outcome of the case— waives any rights of privilege in the information. Under the reasoning suggested by Plaintiffs, any information shared by either the Property Damage Committee or the Health Claimants' Committee with the Trade Creditors' Committee prior to the Trade Creditor's Committee intervening as a Plaintiff, would waive the attorney-client privilege and the work product protection in any of that shared information.

### Community of Interest Argument

There is no pressing need to comment upon the "community of interest" argument addressed by the parties considering this Court's ruling. However, community of interest doctrine asserts, "[a] community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1974). The *Duplan* court further noted: "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Id.*

■ As this Court finds the ten documents in question fit within the more common areas of attorney-client privilege and work product doctrine, the line of cases following *Duplan* may be outside the scope of this Court's determination. Nonetheless, *Duplan* reveals an interpretation of community of interest sufficiently broad to encompass Debtor and Defendants in the case at bar. In any instance, the Debtor and Defendants share common legal interests in this and the gener-

---

**3.** This Court does not follow *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), which held "... where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." *Id.* at 1103–04. However, "[t]he attorney-client privilege still has viability for the corporate client." *Id.* These types of shareholder derivative actions are clearly distinguishable from the case at bar. The Court further notes the *Garner* decision does not apply to material protected by the work product doctrine.

al bankruptcy case—not solely commercial interests (a melange).

The Plaintiffs advance *Yorke v. Santa Fe Industries, Inc. (In Re Santa Fe Trail Transportation Co. and BN Transport, Inc.,* 121 B.R. 794 (Bankr.N.D.Ill.1990), on the subject of community interest doctrine. The *Yorke* court faced facts concerning fraudulent transfers alleged by the Chapter 7 Trustee. The Debtor was formerly a wholly owned subsidiary of the Defendants. After a sale, the Bankruptcy of the subsidiary was filed and fraudulent transfer recovery was sought against the former parent company. The parent company asserted attorney-client privilege and work product doctrine to prevent the Trustee from discovering certain documents regarding its former subsidiary. The *Yorke* Court held:

> The court answers the questions presented in terms of "privilege." Yet, it has been difficult to apply the attorney-client privilege and work-product doctrine to the facts. As the saying goes, "you can't put a square peg in a round hole." It is obvious' to the court that there was never a thought of the attorney-client privilege or work product doctrine by the in-house lawyers working for this business enterprise respecting SFI [parent/defendant] and its affiliates, including of course SFTT [subsidiary/debtor]. SFTT was just part of the corporate family. No one has suggested and such a suggestion would be ludicrous that disclosures by SFTT to Donohoe [in house counsel] would be held in confidence from SFI or any of the other affiliates represented by SFI's in-house counsel.

*Id.* at 800–01.

While the bankruptcy Court granted a motion to compel documents in the *Yorke* case, and the Plaintiffs refer to the case to support granting a similar motion in this case, the Court finds the reasoning of the *Yorke* court supports an opposite conclusion, especially in a corporate reorganization case.

■ While counsel for Debtor is not the same as counsel for Defendants in the case at bar, Debtor and Defendants are members of the same corporate family. As such, under the *Yorke* reasoning, no one at Celotex ever intended the documents shared with Jasper and Jim Walter Corporation to be protected by attorney client privilege. Yet the privilege arises as a matter of law, not intent. Lack of intent on the part of Debtor may be evidence of waiver, however, there was no waiver in the sharing of the documents herein. The documents herein were created postpetition in contemplation of Debtor's confirmation in which Defendants are legally and commercially engulfed.

## Conclusion

■ As part of the ongoing contested matter over confirmation in the general bankruptcy case, the Defendants in this adversary proceeding and the Debtor are involved in a confrontation with the Plaintiffs in this Adversary proceeding. The ten documents at issue contain information this Court finds clearly falls within the bounds of attorney-client privilege and the work product doctrine as to Debtor in the general case.[4] Further, the Court finds Debtor's actions in sharing this information with its parent companies (insiders), Defendants' in this case, did not waive any of the protection of either doctrines. To so hold would allow Plaintiffs to attain documents relevant to the general bankruptcy case, but unavailable in that forum, through the discovery process in this adversary proceeding. The Court denies Plaintiffs' Motion to Compel Production of Documents. Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Court denies the Plaintiffs' Motion to Compel Production of Documents. **DONE AND ORDERED.**

---

4.  Documents 1 and 2 are asserted by the Defendants to have attorney-client privilege protection.

Defendants do not assert work product protection in those two documents.