In re MADISON MANAGEMENT GROUP, INC., a Delaware corporation, as successor in interest to Clevepak Corporation and as successor in interest to Interpace Corporation, Debtor.

Richard M. FOGEL, as Chapter 7 Trustee for Madison Management Group, Inc., Plaintiff,

v.

Samuel ZELL, the Estate of Robert Lurie, Great American Management And Investment, Inc. and Great American Financial Group, Inc., Defendants.

Bankruptcy No. 91 B 23969.
Adversary No. 92 A 1708.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 25, 1997.

Glen H. Kanwit, Hopkins & Sutter, Chicago, IL, for Plaintiff.

James A. White, Jones Day Reavis & Pogue, Chicago, IL, for Defendant.

Richard M. Fogel, trustee.

### MEMORANDUM OPINION

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

This matter comes before the Court on the motion of Richard M. Fogel, Chapter 7 Trustee ("Trustee") for Madison Management Group, Inc. ("Debtor") to lift protective orders as to documents withheld by Samuel Zell, The Estate of Robert Lurie, Great American Management and Investment, Inc. ("GAMI") and Great American Financial Group, Inc. f/k/a Great American Industrial Group, Inc. ("GAFGI") (collectively, "Defendants") on the basis of privilege. The question of whether the protective orders should be lifted or modified was set for oral argument. Having reviewed the papers and heard the arguments of the parties, the Court denies the Trustee's motion to lift the protective orders.

### BACKGROUND

The history of the underlying bankruptcy case and the appointment of a trustee are discussed at length in this Court's Findings of Fact and Conclusions of Law dated January 24, 1992 and published at *In re Madison Management Group, Inc.*, 137 B.R. 275 (Bankr.N.D.Ill.1992)("1992 Opinion"). Pursuant to the 1992 Opinion, the Court found that "it is in the best interest of the creditors and the estate to appoint a trustee with limited powers to investigate any and all potential causes of action against GAMI and GAFGI, including, but not limited to, alter ego causes of action, preferences and fraudulent conveyances....". 137 B.R. at 282.

Pursuant to the 1992 Opinion and an accompanying order, Richard M. Fogel was appointed Trustee for the limited purposes set forth above. Pursuant to the powers granted by his appointment, the Trustee brought the instant adversary proceeding seeking to set aside a group of allegedly fraudulent conveyances.

During the pendency of this adversary, the Trustee has sought access to certain documents that Defendants withheld on the basis of the attorney/client privilege and the work product doctrine. The Court held a hearing on February 15, 1996 and examined approximately 40 of those documents *in camera.* Following the hearing, the Court ordered Defendants to produce all but two of the documents to the Trustee.

By agreement of the parties, the documents were also produced to the attorneys for certain contingent creditors. Wright–Howard–Smith Joint Venture ("WHS"), one of these creditors, had requested permission to attend certain depositions. By order dated January 2, 1996, creditors—WHS, Camp Dresser McKee ("CDM") and the Retirees' Committee (the "Retirees")—were granted permission to attend these depositions, but not to participate. Therefore, the parties agreed that the documents covered by the protective orders would be labelled "for attorneys' eyes only" so that attorneys for these creditors could attend the depositions where those documents were used.

The Trustee has now moved for modification of the protective orders so that he may show these documents to third parties, not just their attorneys. This motion raised two questions left open by the Court's earlier ruling; whether any privilege attaches preventing disclosure of the documents to third parties, and whether, if there is such a privi-

lege, the Trustee has the power to waive it unilaterally.

## DISCUSSION

At the time that the documents at issue were prepared, defendants GAMI and GAF-GI were the parent corporations of the Debtor and defendants Zell and Lurie were officers and directors of the parent corporations. The Defendants argue that the documents are privileged as to third parties because at the time of their preparation the Defendants had a valid expectation of confidentiality as to third parties, even if they did not have such an expectation as to the Debtor.

In ordering the Defendants to produce the documents to the Trustee, this Court relied on *In re Santa Fe Trail Transportation Co.,* 121 B.R. 794 (Bankr.N.D.Ill.1990). In *Santa Fe,* the trustee of an insolvent former subsidiary of Santa Fe Industries ("Santa Fe") successfully sought from Santa Fe its inside counsel's files on the transaction by which Santa Fe divested the subsidiary. *Santa Fe,* 121 B.R. at 796–797. The inside counsel had provided legal services to both Santa Fe and its subsidiary. Chief Judge Schwartz of this District held that the trustee, standing in the shoes of the former subsidiary/debtor, was entitled to know all that Santa Fe knew with regard to the transaction. Judge Schwartz did not have to decide whether the privilege protected the documents from third parties. But he did comment that "[t]he claim of privilege as to those outside the family is a totally different problem." *Id.* at 799.

Following the *Santa Fe* precedent, this Court resolved the question of whether the Defendants could keep the documents in question from the Trustee. Having found that no privilege exists as to the Trustee, however, the Court must now turn to the uncharted waters surrounding the question of disclosure to third parties. Neither the *Santa Fe* Court nor this Court decided the issue of whether there is a privilege *as to third parties* once the parent and subsidiary have become adversaries. The parties presented no authority on this point, and the Court could find no published precedent on the issue.

Nevertheless, there is guidance to be found in the reasoning of *Santa Fe* which suggests that third parties should not be able to discover the privileged communications. The *Santa Fe* Court offered three reasons for its holding that there is no privilege among a parent corporation, its subsidiary and the trustee who steps into one of their shoes. None of these reasons should apply to third parties. First, the Court opined that the parent company had no expectation of confidentiality as against the subsidiary. Here, however, the Debtor would expect its communications to its counsel to be kept confidential from third parties, even if not from its parent corporations. Second, the Court found that the parent-subsidiary relationship is like a joint representation. When joint defendants become adverse to each other, however, there is still a reasonable expectation of confidentiality as to third parties. *See Ohio–Sealy Mattress Mfrg. v. Kaplan,* 90 F.R.D. 21, 32 (N.D.Ill.1980); *Matter of Grand Jury Subpoena Duces Tecum,* 406 F.Supp. 381 (S.D.N.Y.1975). Third, the Court reasoned that there is no privilege between a parent and its subsidiary because the parent's lawyers have knowledge about the subsidiary and therefore the subsidiary's lawyers are entitled to privileged information about the parent. It does not follow that anyone outside the corporations and their counsel should be privy to communications between or among them. In fact, the purpose of the attorney-client privilege is to prevent anyone else from having access. Applying the reasoning in the *Santa Fe* decision to the issue before this Court leads this Court to the conclusion that the documents at issue should not be released to a third party.

A similar conclusion was reached in *Ohio–Sealy Mattress.* "The subsequent litigation exception is based on the view that a joint defendant who later becomes adverse cannot 'reasonably be allowed to deny [the] other [defendant] the use of information which he already has by virtue of the former's own disclosure.' [Citation omitted]. It is quite another matter, however, to make this information available to an adverse party who never participated in a joint defense." 90 F.R.D. at 32.

Finally, it is instructive to examine *Matter of Grand Jury Subpoena Duces Tecum*, 406 F.Supp. 381 where the Court considered whether attorneys had to produce to a grand jury memoranda prepared in furtherance of the joint defense of their clients in an earlier Securities and Exchange Commission investigation. The Court found that the rationale for finding that there is no privilege between joint defendants who become adversarial does not apply to third-party proceedings.

This restructuring of the parties' rights is a logical incident of their later posture: when they face one another in litigation, neither can reasonably be allowed to deny to the other the use of information which he already has by virtues of the former's own disclosure.

There is no similar justification for requiring the disclosure of a former co-defendant's confidences for use in a third-party proceeding. Indeed, to allow such disclosure would so further erode the privilege's protection as to reduce joint defense to an improbable alternative.

*Id.* at 394.

The Trustee in the instant case argues simply that the joint privilege is lost when parties become adverse, citing *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F.Supp. 841, 844–845 (N.D.Ill. 1988). While this is generally true, the adversity or subsequent litigation exception has only been applied between the parties whose interests were originally joined. In those situations, as the Court notes above, there is no longer any purpose for containing information to which both parties have already had access. They are now using it against each other. It is quite a different matter, however, to reveal the information to a third party unless both of the parties whom the privilege is protecting consent to waive it.

 Whether the Trustee may unilaterally waive the privilege is the second issue before the Court. There is no doubt that the Trustee holds the Debtor's attorney-client privilege. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985)("the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-

client privilege with respect to prebankruptcy communications."). However, a former joint defendant generally cannot unilaterally waive the privilege as to third parties. *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F.Supp. 841, 845 (N.D.Ill.1988)("To allow either party to disclose a former co-defendant's confidences in a third-party proceeding would erode the privilege's protection and render a joint defense unfeasible."); *In re Sealed Case*, 120 F.R.D. 66, 71 (N.D.Ill.1988)("the privilege cannot be waived by one former joint defendant in favor of a third party where the former joint defendants have merely developed ill feeling or a divergence of interest."); *Ohio–Sealy Mattress*, 90 F.R.D. at 29 (settling defendants not permitted to unilaterally waive the attorney-client privilege).

In *Medcom Holding*, Medcom Holding sued Baxter, which had sold its subsidiary, Medcom Inc., to Medcom Holding. Medcom Holding alleged fraud in the transaction. Medcom Holding sought to waive the attorney-client privilege belonging to Medcom Inc. because it controlled Medcom Inc.'s privilege rights and because Medcom Inc.'s interest was adverse to Baxter's in that litigation. The documents at issue related to earlier litigation in which Baxter and Medcom Inc. had been sued by third parties, Fuisz and Al–Inizi. Baxter refused to waive its privilege with respect to materials prepared in joint defense of the Fuisz and Al–Inizi cases. The Court adopted the magistrate judge's finding that Medcom Inc. could not waive the privilege that attached to the joint defense material created in the Fuisz and Al–Inizi cases in favor of Medcom Holding without Baxter's consent. The Court determined that because Medcom Inc. itself had not become Baxter's adversary in the fraud case, the privilege could not be waived by Medcom Holding.

*Medcom Holding* does not deal directly with the question presented here. It does, however, persuasively narrow the circumstances under which a party holding a joint defense privilege may waive such privilege as to the party to whom the privilege originally belonged and specifically refuses to extend it to one who steps into that party's shoes at a

later date. The Court determined that "[t]o allow either party to disclose a former co-defendant's confidences in a third-party proceeding would erode the privilege's protection and render a joint defense unfeasible." *Id.* at 845.

■ In *Sealed Case,* 120 F.R.D. 66 and *Ohio–Sealy Mattress,* 90 F.R.D. 21, neither Court was directly confronted with the situation presented here of a trustee seeking to waive a joint defense privilege in favor of a third party over the objections of the co-defendants and former parent corporations. Each of these cases contains dicta stating that the adversity of the parties might permit a unilateral waiver of the privilege. But neither of these Courts was called upon to resolve the question. It is this Court's opinion that the joint defense privilege would be stripped of its purpose and effectiveness if one party could unilaterally waive the privilege in favor of a third party, even if the original defendants have become adverse. Allowing such unilateral waiver would only encourage the creation of adversity to suit the purposes of one of the original parties. Therefore, the Trustee's motion is denied.

### CONCLUSION

For the reasons stated above, the Trustee's motion to lift the protective orders as to documents withheld by Samuel Zell, The Estate of Robert Lurie, Great American Management and Investment, Inc. and Great American Financial Group, Inc. f/k/a Great American Industrial Group, Inc. on the basis of privilege is denied and the Trustee may not unilaterally waive the attorney-client privilege with respect to the documents that are the subject of the Trustee's motion.